

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB 2 5 2016
9:02 am
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| LARISSA A. BEACH, | § § | |
| Plaintiff, | § § | |
| v. | § | Civil Action No. 6:14-CV-023-BL |
| | § § | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | § § § | |
| Defendant. | § § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Larissa Beach ("Beach") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be reversed and remanded.

### I. BACKGROUND

Beach claims that she became disabled on July 24, 2010, due to posttraumatic stress disorder ("PTSD"), bipolar disorder, depression, anxiety, neck pain, degenerative disc disease, and headaches. (Tr. 245). It is important to note that Beach's previous application was denied on July 23, 2010, and her date of last insured was March 31, 2011. (Tr. 61). Therefore, the relevant time period for this application and the Court's review is July 24, 2010, through March 31, 2011. (Tr. 61). Beach protectively filed an application for DIB on December 1, 2011. (Tr. 210). Beach's application was initially denied on January 24, 2012, and on reconsideration on April

1

10, 2012. (Tr. 163, 170). Subsequently, Beach requested and received a hearing before Administrative Law Judge Anne Pate ("ALJ") on November 27, 2012. (Tr. 61). On December 18, 2012, the ALJ issued an unfavorable decision finding that Beach was not disabled and was capable of performing work that existed in significant numbers in the national economy. (Tr. 58-72).

The ALJ followed the sequential five-step analysis to arrive at this decision.[1] First, the ALJ determined that Beach had not engaged in substantial gainful activity since the date of her alleged onset of disability, July 24, 2010. (Tr. 63). Next, the ALJ determined that Beach suffered from the following severe impairments: affective disorder (bipolar disorder v. major depressive disorder) and PTSD. (Tr. 63). Third, the ALJ surmised that Beach's severe impairments did not equal the severity of the impairments in the listings.[2] (Tr. 66). Next, the ALJ determined that Beach had the residual functional capacity ("RFC") to perform the full range of work activity at all exertion levels with the following non-exertional limitations: Beach could perform simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes in an environment free of fast-paced production requirements, where interpersonal contact was only incidental to work performance, and where supervision was simple, routine, direct, and concrete. (Tr. 67). Next, the ALJ concluded that Beach could not return to her past relevant work. (Tr. 70). The ALJ determined that Beach was capable of performing other jobs that exist in significant numbers in the national economy. (Tr. 70-71). Finally, the ALJ determined that Beach was not disabled within the meaning of the Social Security Act during the relevant time period. (Tr. 72).

---

[1] See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[2] See 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

2

The Appeals Council denied review on March 21, 2014. (Tr. 5). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. LEGAL STANDARD

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the

most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### III. ANALYSIS

Beach raises four issues on appeal: (1) whether the ALJ properly weighed the psychiatric medical evidence, (2) whether the ALJ properly evaluated Beach's credibility, (3) whether the ALJ erred by finding that Beach has no severe physical impairments, and (4) whether the ALJ gave proper consideration to the Department of Veterans' Affairs ("VA") disability determination. (Doc. 11, p. 5).

### A. The ALJ properly weighed the medical evidence.

Beach insists that the ALJ improperly discounted the medical opinion of her treating psychiatrist, Dr. Lalitha Rao. Specifically, Beach argues that the ALJ erred by not affording, or explaining why she did not afford, controlling weight to Dr. Rao's opinion regarding her functional limitations. (Doc. 11, p. 14-18).

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination on the claimant), or non-examining sources (a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502, 416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Greenspan*, 38 F.3d at 237; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

When good cause is shown, an ALJ may assign little weight or even no weight to a treating source opinion. *Greenspan*, 38 F.3d at 237. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. The regulations list factors which "an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling

5

weight." *Id.* The analysis should include: (1) the physician's length of treatment of the claimant, (2) the nature and extent of the treatment relationship, (3) the support of the physician's opinion afforded by the medical evidence of record, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating physician, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

Even so, courts in the Northern District of Texas have held that "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (emphasis added).[3] Furthermore, following *Newton*, the Fifth Circuit explicitly clarified that the holding in that case applied only to the limited situation where "the ALJ rejects the sole relevant treating or examining medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Consequently, when the record contains competing first-hand medical evidence, the ALJ is not required to analyze the criteria set forth in 20 C.F.R. § 404.1527(c)(2) before declining to give great weight to a treating physician's opinion. *Newton*, 209 F.3d at 458; *Lopez v. Astrue*, 854 F. Supp. 2d 415, 423 (N.D. Tex. 2012); *Nicaragua v. Colvin*, No. 3:12-CV-2109-G BN, 2013 WL 4647698, at *4 (N.D. Tex. Aug. 29, 2013). The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d

---

[3] *See also Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008).

785, 790 (5th Cir. 1991). Also, the ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56.

Here, the Commissioner contends that the ALJ properly articulated her reasons for affording less than controlling weight to Dr. Rao's opinion and beyond that, the ALJ was not required to examine the § 404.1527(c)(2) factors because this case contains competing first-hand medical evidence, namely Dr. Rao's own progress notes. (Doc. 17, p. 15-21). The Commissioner points out that Dr. Rao completed a Psychiatric Impairment Questionnaire, dated June 9, 2010,[4] finding Beach "markedly limited" in several functional areas including the ability to: (1) remember locations and work-like procedures; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or proximity to others without being distracted by them; (5) complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) respond appropriately to changes in work setting; (10) travel to unfamiliar places or use public transportation, and (11) set realistic goals or make plans independently of others. (Doc. 17, p. 15-16; Tr. 290-297). In the same questionnaire, Dr. Rao endorsed positive clinical findings including poor memory; emotional lability; difficulty thinking or concentrating; suicidal ideation; oddities of thought, perception, speech, or behavior; perceptual disturbances; blunt, flat,

---

[4] The ALJ notes, as does the Court, that Dr. Rao conducted this assessment (the questionnaire) prior to the relevant time frame for this disability evaluation.

or inappropriate affect; manic syndrome; and obsessions or compulsions. (Tr. 291). The ALJ rejected Dr. Rao's positive clinical findings because none of the listed conditions is reflected in her progress notes. (Tr. 70). Also, the ALJ afforded less weight to Dr. Rao's opinion regarding the areas in which Beach is "markedly limited" because "they are simply not borne out by the objective evidence as a whole . . . and are not supported by Dr. Rao's own progress notes." (Tr. 70). Finally, Dr. Rao also noted that Beach was unlimited, "mildly limited," or "moderately limited" in several related functional areas. (Tr. 290-297). The ALJ adopted those limitations because they were consistent with the record and Dr. Rao's notes. (Tr. 70).

For instance, the ALJ explains that in August 2010, Dr. Rao examined Beach and found her to be alert with an affect within normal range, fully oriented, of average intellect, with memory intact, denying hallucinations and illusions, not delusional, and without suicidal or homicidal ideation. (Tr. 68, 408). Then, in September 2010, Beach reported to Dr. Rao that the intensity and frequency of her mood swings had decreased and that she regularly communicated with a friend. The ALJ posits that this indicates that Beach's ability to interact socially was not impaired. During this visit Beach was observed to be alert with normal affect, tired, oriented, of average intellect, with intact memory, denying hallucinations and illusions, not delusional, and without suicidal or homicidal ideation. However, Beach had pulled out her eyelashes. (Tr. 69, 406). Next, Beach saw Dr. Rao in May 2011—after her date last insured—at which point Dr. Rao noted virtually identical results on Beach's mental status evaluation, except Dr. Rao commented that Beach exhibits mild anxiety but added that the "patient takes better care of appearance now." (Tr. 69, 384). The ALJ acknowledged the inconsistency between Beach's denial of medication side effects to Dr. Rao and her later testimony that the medications made her feel drowsy, disconnected, and like she he could not use her brain. (Tr. 69).

Additionally, Beach takes issue with the ALJ's comments about the inconsistencies between her global assessment of functioning ("GAF") scores and Dr. Rao's mental status examinations. Particularly, the ALJ remarked that Beach's GAF scores of 40 and 45, both from June 2010, indicate a "greater degree of psychiatric impairment and resulting functional limitations than indicated in [Dr. Rao's] progress notes for the period relevant [to] this decision, where on all occasions Dr. Rao assigned GAF scores of 50." (Tr. 69). Beach essentially contends that GAF scores are unreliable and no longer utilized by the Commissioner or the American Psychiatric Association to determine the severity of mental functioning, but, if they were, her scores between 41-50 would indicate that she was unable to work according to the DSM-IV. (Doc. 11, p. 20). Beach avers that this position would be consistent with the findings in Dr. Rao's questionnaire. The Court is not swayed by Beach's argument. As required, the ALJ sufficiently explained his reservations about Dr. Rao's earlier GAF scores. *See Newton*, 209 F.3d at 458.

Finally, Beach claims that since the ALJ rejected Dr. Rao's medical opinion, the record is devoid of a reliable medical opinion on which the ALJ's RFC could be based, otherwise known as a *Ripley* error. (Doc. 11, p. 21) (citing *Ripley v. Chater*, 67 F.3d 552, 557 n.27 (5th Cir. 1995)). However, as stated, the ALJ did not reject Dr. Rao's entire opinion, but rather the portions from the out-of-date questionnaire that were inconsistent with her own objective medical observations. The ALJ based the RFC on Dr. Rao's medical records and the remainder of the impairment questionnaire, not solely on the ALJ's own opinion. As such, no *Ripley* error occurred. *See Ripley*, 67 F.3d at 557.

Accordingly, a review of the ALJ's opinion in conjunction with the evidence on record reveals no error in affording little weight to part of Dr. Rao's findings in her Psychiatric Impairment Questionnaire—completed before the relevant time period. The ALJ thoroughly

explained his reasons for affording less weight to that portion of Dr. Rao's opinion. Further, the ALJ's findings and determinations are consistent with competing, first-hand evidence, namely Dr. Rao's own mental status examinations. *See Newton*, 209 F.3d at 456. In the face of competing, first-hand evidence, analysis of the § 404.1527(c)(2) factors is not required. *Id.* at 458; *Lopez*, 854 F. Supp. 2d at 423.

### B. The ALJ properly assessed Beach's credibility.

Next, Beach contends that the ALJ conducted a faulty credibility analysis in failing to supply the requisite details when determining that Beach's statements concerning the intensity, persistence and limiting effects of her symptoms were "credible only to the extent they are consistent with the findings of this decision for the reasons already described at length . . . ." (Doc. 11, p. 27; Tr. 70). When a claimant alleges symptoms such as pain or fatigue, the ALJ must conduct an objective/subjective, two-step analysis to evaluate the symptoms. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008); SSR 96-7p, 1996 SSR LEXIS 4. During the first, objective step, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* at 458. When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ must articulate specifically the evidence that supported [her] decision and discuss the evidence that was

10

rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state her reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for her credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

For the objective part of the two-step analysis, the ALJ determined that Beach did indeed have affective disorder (bipolar disorder v. major depressive disorder) and PTSD. (Tr. 63). Then, the ALJ opined, "After careful consideration of the evidence, the undersigned finds that the

claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 70). Next, for the subjective part of the analysis, the ALJ is required to make a determination as to the extent and credibility of the claimant's symptoms. In Beach's case, the ALJ acknowledged her awareness of this required, two-step analysis and completed the necessary steps, albeit not in mechanical form. (Tr. 67-70).

The ALJ's opinion contains evidence that she addressed the seven factors, where applicable, enumerated in SSR 96-7p. The ALJ considered Beach's daily activities **(1)** and noted that she cleaned her house two to three days a week, prepared meals in the microwave, and talked to a friend on the phone. (Tr. 64, 68). Next, the ALJ assessed the location, duration, frequency, and intensity of Beach's symptoms **(2)** by examining Beach's testimony and the medical observations of Drs. Rao, Dobson, King, Rowley, and Cremona. (Tr. 64-70). The ALJ did not identify any precipitating or aggravating factors **(3)** related to Beach's severe impairments, but she did note that Beach missed and eventually stopped attending her physical therapy appointments. (Tr. 65). The ALJ, assessing Beach's medications **(4)**, documented that Beach took Hydrocodone for pain relief, Trazadone for sleep disturbances, Abilify, and Tegretol. (Tr. 64-68). The ALJ remarked that Beach attended supportive therapy as a treatment, other than medication, for relief of her pain or other symptoms **(5)**. (Tr. 69). The ALJ did not identify whether Beach utilized other measures to relieve her pain or other symptoms **(6)**. Finally, the ALJ clearly expressed knowledge of other factors concerning Beach's functional limitations and restrictions due to pain or other symptoms **(7)**. This is evident in the ALJ's RFC assessment and findings. (Tr. 64-70).

Despite Beach's contention, the Court finds that the ALJ conducted a proper credibility analysis—regardless of form—by weighing both the objective and subjective evidence in

Beach's case. *See Prince*, 418 F. Supp. 2d at 871; *see also* 20 C.F.R. § 416.929(c)(3). Accordingly, the Court finds no error in the ALJ's credibility determination.

### C. The ALJ did not err in determining that Beach had no severe physical impairments.

Next, Beach avers that the ALJ erred when determining that she had no severe physical impairments. An impairment is not severe if it is "a slight abnormality (or a combination of slight abnormalities) that causes no more than a minimal effect on the ability to do basic work activities." SSR 96-3p. However, Beach contends that her cervical spine impairment was severe and that this is evidenced in the objective medical records. (Doc. 11, p. 22). In support, Beach relies heavily on Dr. Patti King's multiple impairment questionnaire, dated January 5, 2012, for the proposition that Beach's neck and bilateral upper extremity pain would impose physical limitations on her ability to work. (Doc. 11, p. 23). Dr. King opined that Beach likely had these symptoms and limitations since 2002. (Tr. 418). Beach claims that the medical records for the relevant time period support Dr. King's opinion. Beach takes issue with the ALJ's characterization of Dr. King's medical records as being "without support from abnormal clinical signs or diagnostic imaging findings." (Doc. 11 p. 22-23; Tr. 66).

The Commissioner responds by listing several instances of objective diagnostic testing for the relevant time period that reveals only "minor abnormalit[ies]" to Beach's cervical spine and normal functioning of her bilateral shoulders. (Doc. 17, p. 10-12). Beyond that, the Commissioner points out that none of Beach's physicians indicated that she had any functional limitations due to her cervical spine impairment during the relevant time period. (Doc. 17, p. 13). The Commissioner remarks that only Dr. King—ten months after Beach's date of last insured— opined that Beach had physical limitations that would limit her ability to work. (Doc. 17, p. 13).

The Court finds no error in the ALJ's determination that Dr. King's opinion is not supported by the objective medical evidence from the relevant time period. *See Newton*, 209 F.3d at 456. Further, even if Dr. King's opinion did relate to the correct time period, Beach has not shown that a finding of a severe cervical impairment would alter the ALJ's RFC because Beach fails to allege what functional limitations would result. Accordingly, this issue does not require remand.

### D. The ALJ erred by not explaining the weight afforded to the VA's disability decision.

Finally, Beach complains that the ALJ failed to adequately consider and explain her rejection of Beach's VA total service-connected disability rating. Beach writes, "The ALJ's failure to give the VA determination any weight or explain why the decision was not given weight was erroneous in light of the evidence that Ms. Beach has disabling mental impairments." (Doc. 11, p. 29). The Commissioner responds that the ALJ was not bound by the VA disability rating decision because it "provides no indication of the evidence that allegedly supported the rating, no discussion of work-related limitations, and no evaluation of jobs Beach could or could not do." (Doc. 17, p. 24).

"A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001) (citing *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000)). Generally, a VA disability determination is entitled to "great weight," but, the relative weight afforded to the determination is contingent upon the factual circumstances of each case. *Chambliss*, 269 F.3d at 522. "Thus, while an ALJ need not give 'great weight' to a VA disability determination, if [she] declines to do so, [she] must adequately explain the valid reasons for not

doing so." *Albo v. Colvin*, No. 2:12-CV-0066, 2013 WL 5526584, at *7 (N.D. Tex. Sept. 30, 2013). "The failure to follow this rule is legal error requiring reversal." *Id.*

First, the Commissioner's contention that the VA did not specify the evidence it relied on in making the total disability decision is unfounded. In the VA rating decision dated April 1, 2009, the VA found that Beach had a total and permanent service-connected disability and it listed the specific evidence that it relied upon to make its determination. (Tr. 280-282). Listed as part of that evidence were "VA examinations dated February 19, 2009 and March 13, 2009." (Tr. 281). These examinations were included in the record at pages 999 through 1026. Thus, the ALJ was not without notice of at least part of the basis for the VA's total disability rating.

Furthermore, the Commissioner posits that the ALJ sufficiently considered the VA's disability rating, but ultimately determined that she was not bound by it. (Doc. 17, p. 24). While the ALJ mentions Beach's treatment at the VA Medical Center throughout her decision, a thorough search of the decision reveals that she mentioned the VA disability rating only twice. (Tr. 65, 68). The ALJ writes, "Of further significance, although the claimant receives a 100% service-connected disability pension from the Department of Veterans' Affairs, she has no percentage of disability assigned for disorders of the cervical spine or shoulders." (Tr. 65). Also, "The claimant receives a service-connected disability pension from the Department of Veterans' Affairs, with service connection for major depressive disorder with an evaluation of 50% effective February 21, 2007." (Tr. 68). The ALJ's shear lack of discussion about the VA disability rating is not indicative of a meaningful review sufficient to justify rejection of the decision. *See Albo v. Colvin*, 2013 WL 5526584, at *7 ("While several pages of the ALJ's decision discussed plaintiff's mental impairment, the discussion did not include any mention of the basis for the VA rating. The ALJ's decision must show meaningful consideration of the VA

15

disability determination and provide specific reasons for giving the determination diminished weight."); *see also McCown v. Astrue*, 2008 WL 706704 at *17 (S.D. Tex. March 14, 2008) (remanding because the ALJ only acknowledged the VA rating in his decision, reciting that the rating was not binding and was inconsistent with objective medical record).

"This Court cannot know what the ALJ would have done unless [she] discussed the VA rating and set out the reasons [she] found warranted rejecting the VA disability rating." *Albo*, 2013 WL 5526584, at *8. Accordingly, the Court recommends that the Commissioner's decision be reversed and remanded back to the ALJ for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

The ALJ's decision in this case is not supported by substantial evidence. For the foregoing reasons, the undersigned **RECOMMENDS** that the district court **REVERSE** the Commissioner's decision and **REMAND** Beach's case for further administrative proceedings.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February 25, 2016.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**